**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SEAL SHIELD, LLC,

        Plaintiff,

v.                                               Case No. 6:13-cv-967-Orl-37DAB

OTTER PRODUCTS, LLC; and
TREEFROG DEVELOPMENTS, INC.,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants' Motion to Transfer Venue to the Southern District of California (Doc. 14), filed July 24, 2013;

2. Plaintiff's Response in Opposition to Defendants' Motion to Transfer Venue to the Southern District of California and Incorporated Memorandum of Law (Doc. 37), filed August 22, 2013;

3. Defendants' Amended Reply in Response to Plaintiff's Opposition to Defendants' Motion to Transfer Venue to the Southern District of California (Doc. 56), filed October 25, 2013;

4. Defendants' Motion to Dismiss Claims V Through VIII Pursuant to F.R.C.P. 12(b)(6) (Doc. 13), filed July 24, 2013; and

5. Plaintiff's Response to Defendants' Motion to Dismiss Claims V through VIII Pursuant to F.R.C.P. 12(b)(6) (Doc. 36), filed August 14, 2013.

Upon consideration, the Court finds that Defendants' Motion to Transfer Venue (Doc. 14) is due to be granted, and Defendants' Motion to Dismiss (Doc. 13) is due to be

denied as moot.

## BACKGROUND

This trademark-infringement case involves four businesses operating in four states. Plaintiff Seal Shield is a Florida LLC operating primarily out of Jacksonville and Orlando. (*See* Doc. 35, ¶ 9.) Seal Shield owns KlearKase, LLC, a Washington limited liability company. (*See id.*, p. 29.) Defendant Otter Products ("Otter") is a Colorado LLC. (Doc. 14, p. 8.) Otter allegedly[1] owns Treefrog Developments, Inc., a Delaware corporation principally operating out of San Diego, California. (Doc. 35 ¶ 11.) All four companies develop and sell protective cases for portable electronic devices. (*See* Doc. 35, ¶¶ 18–30; Doc. 14, p. 8.) Seal Shield is suing Otter and Treefrog ("Defendants"), claiming the Defendants are infringing upon rights that Seal Shield acquired in the LIFEPROOF family of marks when it purchased KlearKase.

This action will turn on whether Treefrog or KlearKase first established priority over the LIFEPROOF family of marks. Seal Shield (the owner of KlearKase) alleges that KlearKase developed the LIFEPROOF marks in Washington state "[a]t least as early as June 2010." (*See* Doc. 35, ¶ 20.) Treefrog counters that, acting out of its San Diego headquarters, it developed and sold products under the LIFEPROOF brand prior to June, 2010. (*See* Doc. 14, p. 5.) Treefrog is the current registered owner of the LIFEPROOF trademark. (*See* Doc. 35, ¶ 3; Doc. 14, p. 5.) Neither Seal Shield nor Otter played any role in the initial development of the LIFEPROOF marks; rather, they are

---

[1] Defendant contends that OtterBox Holdings, Inc., a Colorado-based corporate affiliate of Defendant Otter, is the actual owner of Treefrog. (*See* Doc. 14, p. 9.) Moreover, Otter notes that "LifeProof's employees became employees of Otter Products, Inc." (*Id.* at 5 n.2.) Defendant Otter does not clarify the relationship between itself and its corporate affiliates, but it acknowledges that all of Lifeproof's former employees continue to reside and work in San Diego, which is most relevant to this motion to transfer. (*Id.*)

2

involved in this suit solely because they subsequently acquired the companies responsible for the marks' development.

Plaintiff filed suit in the Middle District of Florida. (Doc. 1). Defendants move to transfer this case to the Southern District of California. (Doc. 14.) Plaintiff opposes. (Doc. 37.) Defendants replied. (Doc. 56.) This matter is now ripe for the Court's adjudication.

## STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "There is ordinarily a strong presumption in favor of the plaintiff's choice of forum," especially where the plaintiff chooses to litigate in his home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981); *see also In re Ricoh Corp.*, 870 F.2d 570, 572–73 (11th Cir. 1989). "Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d at 573. However, courts have discretion to evaluate motions for transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Motions to transfer under § 1404(a) require a two-step inquiry. First, the Court must determine whether the case could have been brought in the transferee forum. *See* 28 U.S.C. § 1404(a); *see also S.E.C. v. BIH Corp.*, No. 2:10-cv-577-FtM-29DNF, 2011 WL 3862530, *2 (M.D. Fla. Aug. 31, 2011). If the transferee forum is proper, then the Court balances the conveniences of the parties. *See BIH Corp.*, 2011 WL at *2. While

3

no single factor controls, courts consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## DISCUSSION

### I. Motion to Transfer

### A. The Transferee Forum

As a threshold matter, the Court finds that this case could have been brought in the Southern District of California. "An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Suomen Colorize Oy v. DISH Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011). Like the Middle District of Florida, the Southern District of California has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Southern District of California is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"—namely the development, marketing, and sales of products bearing the LIFEPROOF marks in San Diego (*see* Doc. 14 p. 15; Doc. 56, p. 6). Both parties are amenable to process in the Southern District of California. Thus, this action could have been brought in the transferee forum.

4

    **B. Convenience**

        **i.**         **Plaintiff's Choice of Forum**.

Plaintiff invokes the traditional rule that its decision to bring suit in its home forum should not be disturbed. (*See* Doc. 37, p. 18 (citing *Piper Aircraft Co.*, 454 U.S. at 255).) Since its inception, Plaintiff has operated out of Jacksonville and Orlando—both located in the Middle District of Florida—and all but three of its nineteen employees currently reside in Florida. (*See* Doc. 37-2, ¶¶ 3, 21.) Thus, there is little doubt that the Middle District of Florida is Plaintiff's home forum. Defendants, however, maintain that Plaintiff's choice of forum should be entitled to little or no weight because "only the fortuitous act of Seal Shield acquiring Washington-based KlearKase in January 2013, a few short months ago, gives Florida any connection [to this action] whatsoever." (Doc. 13, p. 22.) The Court agrees with Defendants.

A plaintiff's choice of forum is entitled to less consideration where the operative facts underlying the cause of action did not occur within the chosen forum. *See Suomen Colorize Oy*, 801 F. Supp. 2d at 1338; *Silong v. United States*, No. 5:05-cv-55-Oc-10GRJ, 2006 WL 948048, *2 (M.D. Fla. Apr. 12, 2006). This is especially true where an action is connected to a plaintiff's home forum solely by way of the plaintiff's relocation there after the bulk of the operative facts occurred elsewhere. *See Cortez v. First City Nat'l Bank of Houston*, 735 F. Supp. 1021, 1024 (M.D. Fla. 1990) (transferring an action from the plaintiff's home forum in Florida to Texas where "[o]nly the fortuitous act of Plaintiff moving to Florida [gave] this State any connection to [the] controversy"). Here, essentially all of the operative facts concerning the development, marketing, and commercialization of the LIFEPROOF marks occurred in California and Washington. (*See* Doc. 14, p. 22; Doc. 16, ¶¶ 4–7; Doc. 37-2, ¶¶ 6–10.) Plaintiff's acquisition of

KlearKase subsequent to KlearKase's development and commercialization of its marks appears to be the only substantial link that this litigation has to the Middle District of Florida. As discussed further below, Plaintiff's contentions that Defendants sell infringing products in the Middle District of Florida and that Plaintiff's witnesses reside here are insufficient in this case to trigger the presumption in favor of its choice of forum. Accordingly, Plaintiff's decision to litigate in the Middle District of Florida merits less deference than would typically awarded to a choice of home forum.

### ii. Locus of Operative Facts & Location of Relevant Evidence

Typically, the locus of operative facts in intellectual property infringement cases is where the "allegedly infringing product was designed, developed, and produced." *Carroll v. Texas Instruments, Inc.*, 910 F. Supp. 2d 1331, 1339–40 (M.D. Ala. 2012); *see also Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791 (S.D. Tex. 2005); *cf. Proven Winners N. Am., LLC v. Cascade Greenhouse*, No. 2:06-cv-428-FtM-29DNF, 2007 WL 1655387, *2 (M.D. Fla. June 6, 2007) ("In finding that 'center of gravity' [of a patent infringement case,] a district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.") (citation omitted). Nearly all of the operative facts concerning Treefrog's "creation, development, marketing, and use of its LIFEPROOF mark" occurred in California. (*See* Doc. 14, p. 19.) Moreover, nearly all the evidence related to Treefrog's marks, including documentation in both paper and electronic form, is located at Treefrog's headquarters in San Diego. (*See* Doc. 23, ¶¶ 5–10.) Thus, the locus of operative facts would typically be in the Southern District of California.

Plaintiff contends that the locus of operative facts is in the Middle District of Florida because Defendants have sold infringing products here. However, Defendant

Treefrog markets and sells its products nationally. (*See* Doc. 56, p. 6 n.1.) "The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Accordingly, these factors also weigh in favor of transfer.

### iii. Convenience of Witnesses & Availability of Process to Compel Attendance of Unwilling Witnesses

While the convenience of the witnesses is a significant factor in determining whether transfer is warranted, "its significance is diminished when the witnesses . . . are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). Thus, the location of non-party witnesses typically controls this factor.

Plaintiff contends that it "anticipates calling numerous non-party witnesses, including managers of . . . retail stores within the M.D. Fla." (Doc. 37, pp. 11–12.) Specifically, to prove infringement, Plaintiff plans to call several managers from "Walmart, Target, Best Buy, Verizon Wireless, and AT&T stores." (*Id.*; *see also* Doc. 37-1, ¶ 5.) Additionally, Plaintiff intends to call the manager of Clear Channel Outdoor's Orlando office to testify regarding billboards in Orlando bearing the LIFEPROOF marks. (Doc. 37-2, ¶ 23.) However, as of October 22, 2013, Plaintiff has only disclosed three specific witnesses who reside in Florida—all of whom are Plaintiff's employees. (*See* Doc. 56-4.) Despite his intentions, Plaintiff has not disclosed the names or expected testimony of any local retail managers, and therefore they are too speculative to be considered in the § 1404(a) convenience analysis.[2] *See Trinity Christian Ctr.*, 761 F.

---

[2] Moreover, Plaintiff's potential witnesses are managers of national retail chains

Supp. 2d at 1327.

By contrast, Treefrog contends that it plans to call several specific non-party witnesses to testify to the development and marketing of the LIFEPROOF marks. (Doc. 14, p. 17.) These witnesses reside in the San Diego area and include Daniel Kozoil,[3] Treefrog's original Vice President of Marketing and Sales, and employees from multiple businesses that contributed to advertising and marketing the LIFEPROOF marks in their early stages, such as Digital Operative in San Diego and Magnetic in Temecula. (*Id.*; *see also* Doc. 17, ¶¶ 7, 12; Doc. 56-5, p. 3.) Defendants further allege that several of these non-party witnesses reside within 100 miles of San Diego and therefore fall within the subpoena power of the Southern District of California but outside of the subpoena power of the Middle District of Florida. *See* Fed. R. Civ. P. 45(c)(1)(A).

Overall, this factor weighs strongly favor of transfer.

### iv.    Convenience & Relative Means of Parties

Plaintiff alleges that litigating in California would be far more burdensome on its business than litigating in Florida would be for Defendants, largely because Defendants purportedly have "three corporate jets for business travel and revenues more than 60 times than that of Plaintiff." (Doc. 37, pp. 13–14.) Defendants contend that both companies are established corporate entities with the means to litigate in either forum, and that Florida litigation would be more disruptive for their businesses because a

---

who were purportedly going to testify about local sales of a product offered nationwide. (Doc. 37, pp. 11–12; Doc. 37-1 ¶ 5.) As addressed above, the nationwide sale of an accused product does not favor any particular venue. *See Acer*, 626 F.3d at 1256. By the same reasoning, the convenience of retail managers from the local branch of a nationwide chain should not favor any single venue when the testimony of those managers is offered only to prove the sale of a nationally marketed product.

    [3] Mr. Koizoil no longer works for Defendants and was among those third-party witnesses specifically listed in Defendants' initial disclosures. (*See* Doc. 56-5, p. 3.)

substantially greater number of their California-based employees will be called to testify in Florida than Plaintiff's Florida-based employees would in California. (*See* Doc. 14, pp. 20–21 (citing *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332 (M.D. Fla. 2002)).)

Though litigating outside its preferred forum undoubtedly inconveniences any party, the Court determines that neither forum in this action would place a disproportionate hardship on the traveling party. Thus, this factor is neutral.

### v.   Forum's Familiarity with Governing Law

In addition to the four claims that Plaintiff brings under federal law, Plaintiff asserts claims of Florida common law trademark infringement and unfair competition. (*See* Doc. 33, ¶¶ 91–104.) Though Plaintiff suggests that this factor weighs against transferring this action, this Court has no reservation about the Southern District of California's ability to interpret and apply Florida law. Accordingly, this factor is neutral or weighs only slightly against transfer.

### vi.   Trial Efficiency & Interests of Justice

Finally, the Middle District of Florida and the Southern District of California have equal interests in enforcing trademark and unfair competition laws. Plaintiff, however, suggests that judicial economy would best be served if this action remained in the Middle District of Florida, which historically resolves cases more expeditiously than the Southern District of California. (*See* Doc. 37, p. 19.) While the relative congestion of dockets might normally weigh in favor of the Middle District of Florida retaining this action, the Court notes that the Southern District of California recently denied Seal Shield's motion to transfer venue to the Middle District of Florida in a patent-infringement action between Seal Shield, KlearKase, and Treefrog. *See Treefrog*

*Developments, Inc. v. Seal Shield, LLC and KlearKase, LLC*, No. 3:13-CV-01575-IEG (S.D. Cal. July 5, 2013). Though the matters are not directly related,[4] judicial economy would likely be best served by transferring this action to the Southern District of California and avoiding the need for the parties and the courts to coordinate parallel litigation proceeding in fora nearly 2,500 miles apart.[5]

On balance then, the § 1404(a) convenience factors weigh in favor of transferring this action out of the Middle District of Florida. The locus of operative facts, the location of the evidence, the convenience of non-party witnesses, and the availability of compulsory process, trial efficiency, and the interests of justice all weigh in favor of transfer. The convenience and relative means of the parties are neutral, and the forum's familiarity with the relevant law is neutral or weighs only slightly in favor this Court retaining this action. Thus, given that the weight of the convenience factors favors transfer and that deference due to Plaintiff's choice of forum is lessened in this case, this action is due to be transferred to the Southern District of California.

**II.   Motion to Dismiss**

Plaintiff filed its Complaint on June 21, 2013. (Doc. 1.) Defendants moved to dismiss several claims in Plaintiff's Complaint on July 24, 2013. (Doc. 13.) On August 12, 2013, Plaintiff filed an Amended Complaint. (Doc. 33.) "As a general matter,

---

[4] The U.S. District Court for the Southern District of California determined that the products at issue in the California patent action do not bear the LIFEPROOF marks at issue in this trademark action. *See Treefrog Dev's*, No. 3:13-CV-01575-IEG, Doc. 36, p. 2.

[5] Otter is also bringing a patent infringement claim against Seal Shield and KlearKase in the U.S. District Court for the District of Colorado. *See Otter Products, LLC v. Seal Shield, LLC and KlearKase, LLC*, No. 1:13-cv-1734-MSK (D. Colo. July 1, 2013). There is a motion to transfer that latest-filed action to the Middle District of Florida currently pending. *See id.*, Doc. 69. The Colorado action, however, contains different claims and appears to involve products not bearing the LIFEPROOF mark. *See id.*, Doc. 1, pp. 3–7.

'[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (citation omitted). Motions directed at the former pleading are therefore mooted by the filing of an amended pleading. *See, e.g.*, *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1297 (S.D. Fla. 2002). Accordingly, Defendants' Motion to Dismiss (Doc. 13) is due to be denied as moot.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss Claims V Through VIII Pursuant to F.R.C.P. 12(b)(6) (Doc. 13) is **DENIED AS MOOT**.

2. Defendants' Motion to Transfer Venue to the Southern District of California (Doc. 14) is **GRANTED**.

3. The Clerk is **DIRECTED** to transfer this case to the U.S. District Court, Southern District of California, for all further proceedings and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 13, 2013.

*[signature]*
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

U.S. District Court, Southern District of California